402 So.2d 61 (1981)
CHASE MANHATTAN MORTGAGE AND REALITY TRUST and Blaeser Development Corporation, Appellants/Cross-Appellees,
v.
Frank A. WACHA, Lavon Bagwell, Maggie Hurchalla, Tom Higgins, and John Holt, Not Individually, but Collectively, Comprising the Board of County Commissioners of Martin County, Appellees/Cross-Appellants.
No. 79-1662.
District Court of Appeal of Florida, Fourth District.
August 12, 1981.
*62 Carolyn Chabora and John Fenniman, Stuart, and William C. Owen, Jr., of Cone, Owen, Wagner, Nugent, Johnson, Hazouri & Roth, P.A., Tequesta, for appellants/cross-appellees.
John T. Carmody, Jr., County Atty., and Robert Makemson, Asst. County Atty., Stuart, for appellees/cross-appellants.
GLICKSTEIN, Judge.
The owner and prospective purchaser of real estate appeal from a final judgment denying them mandamus to compel the Board of County Commissioners of Martin County to approve a site plan and direct the issuance of building permits[1] for development of 160 multiple dwelling units on a twenty acre parcel of land. We affirm.[2]
On or about January 16, 1979, appellee Commissioners denied final approval of the site plan and construction plan that had been submitted by appellants. The bases for said denial were lack of water and inadequate access. The trial court held that the issues of lack of water and inadequate access were fairly debatable and that the Commissioners did not abuse their discretion in denying site plan approval.
Section 33-73 of the Martin County Code contains special requirements for multiple dwelling projects and provides for sketch plans, site plans and construction plans. Sketch plan, site plan and construction plan are defined in Section 33-73(d)(1)(b)-(d) as follows:
(b) Sketch plan is a nontechnical depiction of the existing features of the land and the development proposed thereon together with ownership data. A sketch plan serves the following two (2) purposes:
1. The developer can obtain an early determination of his prospects before he invests heavily in technical plans; and
2. The county can fully evaluate the pros and cons of the project on a before-the-fact basis, thus allowing necessary changes to be made more easily.
(c) Site plan is a technical depiction of a proposed project prepared by a registered engineer and/or surveyor, as appropriate.
(d) Construction plans consist of the maps or drawings accompanying a site plan which show the specific design and location of improvements.
Section 33-73(d)(3) of the Code provides:

Site plan and construction plan specifications: Site plans and construction plans shall be prepared by a licensed, registered architect, engineer or surveyor, as appropriate, shall be prepared in ink, shall be drawn to a convenient scale of not more *63 than one hundred (100) feet to an inch and shall include the following information on the plans or as exhibits thereto:
a. Items k. through q., inclusive, from the sketch plan specifications, except that such items shall be definitive and final, rather than preliminary and approximate, and shall include, where appropriate, such profiles, cross sections, calculations and details as are necessary and proper to show compliance with all applicable county standards;
b. Numbers to be assigned to all buildings in compliance with the provisions of article II of chapter 30; and
c. Required approvals or permits from all concerned state and federal agencies.
Items k. through q. referred to above are from Section 33-73(d)(2)k-q. These subsections require that sketch plans show the following:
k. The approximate location of the following existing items within or immediately adjacent to the property: Buildings, improvements, utilities, drainageways, ditches, swales, watercourses, water surfaces, wooded areas, swamps, marshes, wetlands, tidal lands, mangroves, coastal construction setback lines, antimosquito ditches, easements of any kind whether used or not, streets, roads, railways, culverts, burial grounds, property lines and recorded plats;
l. Approximate topography based on the latest Coast and Geodetic Survey Map;
m. Preliminary proposals for connection with existing water supply and sanitary sewer systems or alternative means of water supply and sanitary waste treatment and disposal;
n. Preliminary proposals for providing drainage outfall or on-site retention conforming with such Martin County subdivision regulations and ordinances as are in force and effect;
o. The approximate location and dimensions of all proposed improvements, including buildings, streets, drives, walks, utilities, parking lots, etc.;
p. The approximate location, dimensions and area of all land proposed to be set aside for park or playground purposes or for other public use (such as bicycle paths, parallel access roads, etc.) or for the use of the future inhabitants of the project;
q. Whenever the sketch plans cover only a part of the applicant's contiguous holdings (disregarding intervening roadways, easements, etc.) the applicant shall also submit, at the scale of not more than two hundred (200) feet per inch, a sketch, in pen or pencil, of the proposed project area, together with its proposed roadway and drainage systems and an indication of the location of probable future projects and their roadway and drainage systems;
As can be seen from the express language of Sections 33-73(d)(3)(a) and 33-73(d)(2)(m) the proposal for a water supply must be definitive and final. We interpret that to mean the actual existence of a source of water, not simply an agreement with a supplier that may become viable some unknown date in the future.
The uncontradicted evidence before the trial court was that F.M. Water, Inc. had been issued a water use permit by South Florida Water Management District; that the permittee was to supply water for the subject development; and that at the time of the appellees' action on application for site plan approval, F.M. Water, Inc. did not have the groundwater withdrawal capability to supply water service to the development. The county engineer wrote in a report prepared for appellees that the existence of a viable source of water had not been established. In view of that report appellees had no choice but to deny appellant's application.
We also affirm on the basis of inadequate access. Section 336.05(2), Florida Statutes (1979) provides:
The commissioners are authorized to refuse to approve for recording any map or plat of a subdivision when recording of such plat would result in duplication of names of streets or roads or when said plat, in the opinion of said commissioners, will not provide safe access or drainage. (Emphasis added.)
*64 We believe that the legislature intended by use of the generic word map that this section apply to the approval of site plans.
Accordingly, we affirm without prejudice to appellants to resubmit their site plan for approval by the Commissioners should the inadequacies be corrected.
AFFIRMED.
LETTS, C.J., and BERANEK, J., concur.
NOTES
[1] Martin County, Code, Section 33-73(b) provides:

(b) Building permits: No building permit for any multiple dwelling shall be issued unless and until a site plan for such dwelling shall have been approved pursuant to this section.
[2] The Board of County Commissioners also filed a cross-appeal. Based on our decision herein, the cross-appeal lacks merit. For ease of reference the parties shall be referred to only as appellants and appellees.